## BROWN MOSELEY v. THE STATE..

1. A defendant charged with a capital offense is subject to be tried on the same charge a second time, after the first jury impanneled in his case were discharged by the court on account of their inability to agree. Such second trial is not inhibited by the provisions of the Constitution of the United States and of this State, protecting persons from being twice put in jeopardy of life for the same offense.

2. The statutory provision (Paschal's Digest, Article 3084) that the court may, in its discretion, discharge a jury who have been kept together for such a time as to render it altogether improbable they can agree, is not in violation or derogation of the constitutional guaranty above referred to.

APPEAL from Smith. Tried below before the Hon. Samuel L. Earle.

This is an appeal from a determination of the court below of a writ of *habeas corpus.*

The appellant, together with Gus Moseley, was charged with the murder of Duff Williams. They severed in their defenses. In the appellant's case the jury failed to agree, and finally were discharged by the court below, without the consent of the appellant or his counsel. After the mistrial the appellant sued out this writ, on the ground that having once been put in jeopardy of life he could not be tried a second time. The court below decided otherwise, but granted him the privilege of bail.

*Donley & Henry,* for the appellant.

*J. G. Boyle,* Assistant Attorney General, for the State.

OGDEN, J.—The question presented by the record and pleading in this case for adjudication by this court, is the legitimate interpretation and construction of that clause of the Constitution of

the United States, which provides that, "no person shall be subject for the same offense to be twice put in jeopardy of life or limb," and the consequent interpretation and force of the Constitution and laws of this State, in relation to the subject. The Constitution of this State declares that "no person for the same offense shall be twice put in jeopardy of life." And appellant claims, that as he has once been put upon trial in this case, charged with a capital offense, and his case having been submitted to a jury, he has once been put in jeopardy of life, and cannot legally be again tried, notwithstanding the jury failed to agree and were discharged by the court, without having found a verdict.

The philological and legal interpretation of the word "jeopardy," in its connection with the remaining portion of that clause of the Constitution, has been a fruitful source of forensic and judicial discussion, ever since the adoption of the Constitution, and indeed for centuries previous.

A history of the origin of, and the discussions and judicial decisions in relation to that important principle of the common law, that the accused could not be twice put in jeopardy for the same offense, would be more interesting to the student, than useful in arriving at a correct decision of the case at bar. All authorities agree that the word jeopardy, in its common and legal signification, means danger or hazard, but many disagree as to the time when that danger begins to a person charged with an offense, and when it ends. There are those who contend with much plausibility and common sense that the jeopardy or danger begins with the prosecution or indictment, and ends only with the acquittal, or in case of conviction with the execution of the judgment of the court. There are others who in fact maintain that the danger begins and ends with the submission to the jury, and that a verdict is not necessary to complete the jeopardy and save the defendant from another trial. But it is believed that this question has finally been settled by the highest authority in England and

Opinion of the court.

America to have reference to the trial and verdict, and that no person can legitimately claim an exemption from a second trial under this maxim, unless he has once been tried by a lawful jury upon a good indictment, and acquitted or convicted. (Blackstone's Com., vol. 4, 335 ; Kent's Com., 2 vol., 13; Story Cons., 532; Whart. Crim. Law, vol. 1, p. 573; 4 Coke, p. 44; and Hawk. P. C., 515.)

But it is maintained by counsel for appellant that the court, in trying a capital case, has no legal discretion to discharge a jury without the consent of the defendant, and that a jury having been selected for the express purpose of trying his case, to whom had been submitted the evidence, the argument of counsel and the charge of the court, were and ought to be independent of the court, who had no further authority over them excepting to receive their verdict; and that the defendant had a right to demand and have a verdict from that jury without any interference from the court— that his life was then put in jeopardy, and that if he were compelled to suffer a discharge of the jury without his consent, and be again put upon trial, he would be subjected to a great wrong against which he could have no remedy.   This position was maintained by Lord Coke (1 Institute, 227, and 3 Institute, 100) ; and the courts of Pennsylvania, Tennessee and some other States, have held that a judge or court cannot discharge a jury impanneled in a capital case without the consent of the defendant, until they have rendered a verdict, unless there is an absolute impossibility for the jury to find a legal verdict, such as the death or sickness of one or more of the jurors.   But it is believed that there is no decision by any court of respectable authority, that has gone to the extent of denying to the court or judge a discretionary power to discharge a jury when there is a physical or moral necessity, and it must be left to the court to decide when that necessity exists; and Chancellor Kent in discussing this question, says, (People v. Olcott, 2 Johnson's Cases, 308,) "that when cases of

XXXIII—43

necessity are admitted to form exceptions, that moment a door is opened to the discretion of the court." It is believed to be a fact worthy of note that those authorities that have denied to the courts a discretionary power to discharge a jury, have done so upon the hypothesis enunciated by Lord Coke, that judges and courts are corrupt and aggressive in their character and constitution, and that the safety of the people lies only in the innate purity, honesty and intelligence of the jury; and that to insure the execution of the law, justice and humanity, it is preferable to confine and perhaps starve a jury for an indefinite period, and thereby force from them a reluctant verdict against their judgment rather than permit the court to exercise that dangerous discretion to discharge a jury, when it became morally certain that they could not arrive at an intelligent and honest verdict.

We are of opinion that the best interests of society may be more fully maintained and subserved by permitting the courts to exercise a sound and careful discretion in holding or discharging a jury, whenever a necessity should arise or the public good require. Neither can we discover any wrong which would be likely at this day to result to a person accused of a crime, by the exercise of that discretion, particularly if we may suppose that the defendant wishes a fair and impartial trial and an intelligent, independent and honest verdict.

That a court may exercise a sound and careful discretion in discharging a jury, Chancellor Kent says, "has been settled by overwhelming precedent and authority." (Kent's Com., 2 vol., 13; see also 18 Johnson, 204; Johnson's cases, 2 vol., 302; and Mass. R., 9 vol., 494.) But we think the case of The United States v. Perry, (9 Wheaton's R., 579,) decided by the Supreme Court of the United States, has authoritatively settled this question so far as the Constitution of the United States and of this State is concerned. Judge Story, in delivering the opinion of the court, says: "We think that in all cases of this nature the law

has invested courts of justice with the authority to discharge a jury from giving a verdict, whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would be defeated." But were we disposed to question the able authority last cited, we would still be compelled to submit to the plain and positive language of the statute of our State, (Pas. Dig., 3084,) which says in substance that a court may in its discretion discharge a jury when they have been kept together for such a time as to render it altogether improbable that they can agree.

It is believed that this statute is in no particular in conflict with the Constitution, and is therefore binding on this court. We see no cause for complaint against the judge trying this case in the lower court, but on the contrary the record shows a careful and prudent exercise of the discretion given him by law.

The judgment of the district court is therefore affirmed.

Affirmed.