Maurice McELWEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 54136.

Court of Criminal Appeals of Texas, En Banc.

Nov. 21, 1979.

Steven M. Mason and Wilson McVicker, Jr., Lufkin, for appellant.

Gerald A. Goodwin, Dist. Atty., Lufkin, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON REMAND FROM THE UNITED STATES SUPREME COURT

ONION, Presiding Judge.

"A foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines." [1]

On original submission, a panel of this court affirmed this murder conviction, wherein the punishment assessed was ninety-nine (99) years' imprisonment. We held, among other things, that the appellant's

---

1. Ralph Waldo Emerson, *Essays: First Series* (1841).

rights against being placed in double jeopardy had not been violated. After granting appellant's petition for certiorari to this court, the United States Supreme Court vacated the judgment of this court and remanded the cause for further consideration in light of the decision in *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), which held that the federal procedure as to the time when jeopardy attaches in a criminal trial was preferable to the various procedures followed by the states, and therefore constitutionally mandated.

A brief recitation of the facts pertinent to the dispositive issue in this cause might be helpful. In October of 1974, the appellant was indicted for murder. No prior convictions were alleged in the indictment. On February 4, 1975, the case was called to trial and the jury was impaneled and sworn. However, the indictment was not read nor did the appellant plead to the indictment. In fact, the proceedings advanced no further at that time because the trial judge was engaged in another trial. After being admonished, the jury was told to return on February 7, 1975 for trial. Because of a delay in the progression of the trial already underway, the trial judge was forced to delay the trial again until February 10. However, prior to this date, the State moved for dismissal of the indictment so that newly discovered previous felony convictions of the appellant could be added for enhancement of punishment purposes in a new indictment. The motion was granted and the jury was discharged. Appellant was reindicted for murder in March of 1975. The new indictment, which reflected two prior felony convictions, was sustained on March 24, 1975, when appellant's plea of former jeopardy was overruled by the trial court. The trial commenced before a new jury on December 9, 1975, which resulted in the appellant's conviction and this appeal.

In affirming appellant's conviction, this court held in pertinent part as follows:

"The Fifth Amendment to the United States Constitution provides that '. . . nor shall any person be subject for the same offense to be twice put in jeopardy of life and limb . . . .' and this provision of the Fifth Amendment was made applicable to the states under the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Taylor v. State*, 474 S.W.2d 207 (Tex.Cr.App.1972); *Duckett v. State*, 454 S.W.2d 755 (Tex.Cr.App.1970).

"Under the federal case law, a termination of the trial after jeopardy attaches can only be proper when required by 'manifest necessity' or the 'ends of public justice,' and jeopardy generally attaches when the jury is selected and sworn. *Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 525 (1973); *United States v. Jorn*, 400 U.S. 486, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963).

"However, it has long been the rule in Texas that jeopardy does not attach until the jury is selected and sworn *and the defendant pleads to the indictment. Lockridge v. State*, 522 S.W.2d 526 (Tex. Cr.App.1975); *Vardas v. State*, 518 S.W.2d 826 (Tex.Cr.App.1975), cert. den. 423 U.S. 904, 96 S.Ct. 206, 46 L.Ed.2d 135 (1975); *Ochoa v. State*, 492 S.W.2d 576 (Tex.Cr.App.1973); *Steen v. State*, 92 Tex.Cr.R. 99, 242 S.W. 1047 (1922); *Yerger v. State*, 41 S.W. 621 (Tex.Cr.App. 1897); *Anderson v. State*, 24 Tex.App. 705, 7 S.W. 40 (1886).

"Finding no compelling reason to overturn this longstanding rule, we adhere to those holdings and overrule appellant's first ground of error. He was not placed in jeopardy when the jury was selected and sworn on February 4, 1975, and thus his subsequent trial on the new indictment was not barred by the Fifth Amendment to the United States Constitution."

The Supreme Court has vacated this holding in light of their opinion in *Crist v. Bretz, supra.* The relevant facts in *Crist* are summarized as follows from the opinion of the Court as delivered by Justice Stewart:

"The appellees, Merrel Cline and L. R. Bretz, were brought to trial in a Montana court on charges of grand larceny, obtaining money and property by false pretenses, and several counts of preparing or offering false evidence. A jury was empaneled and sworn following a three-day selection process. Before the first witness was sworn, however, the appellees filed a motion drawing attention to the allegation in the false pretenses charge that the defendants' illegal conduct began on January 13, 1974. Effective January 1, 1974, the particular statute relied on in that count of the information, Mont.Rev.Codes Ann. § 94–1805 (1947), had been repealed. The prosecutor moved to amend the information, claiming that '1974' was a typographical error, and that the date on which the defendants' alleged violation of the statute had commenced was actually January 13, 1973, the same date alleged in the grand larceny count. The trial judge denied the prosecutor's motion to amend the information and dismissed the false pretenses count. The State promptly but unsuccessfully asked the Montana Supreme Court for a writ of supervisory control ordering the trial judge to allow the amendment.

"Returning to the trial court, the prosecution then asked the trial judge to dismiss the entire information so that a new one could be filed. That motion was granted, and the jury was dismissed. A new information was then filed, charging the appellees with grand larceny and obtaining money and property by false pretenses. Both charges were based on conduct commencing January 13, 1973. Other than the change in dates, the new false pretenses charge described essentially the same offense charged in the earlier defective count."

The defendants were convicted by a new jury under the allegations of the new information. Appeal was taken from that conviction which ultimately resulted in the decision under which we must now modify a rule which has long been recognized as a procedural doctrine in this as well as in other states and the federal system. See, e. g., *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Ludwig v. Massachusetts*, 427 U.S. 618, 96 S.Ct. 2781, 49 L.Ed.2d 732 (1976); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Vardas v. State*, 518 S.W.2d 826 (Tex.Cr.App.1975), cert. den. 423 U.S. 904, 96 S.Ct. 206, 46 L.Ed.2d 135 (1975); *Ochoa v. State*, 492 S.W.2d 576 (Tex.Cr.App.1973); *Anderson v. State*, 24 Tex.App. 705, 7 S.W. 40 (1886).

In foisting upon the states a requirement of uniformity under the guise of a constitutional mandate, the 5–4 majority in *Crist v. Bretz*, supra, concluded there should be no variance between jurisdictions as to when jeopardy attaches in a jury trial. It was concluded that Montana's rule that jeopardy attaches only after the first witness is sworn was repugnant to the constitutional safeguards against double jeopardy.[2] To this extent, it was decided that the federal rule that jeopardy attaches when the jury is impaneled and sworn, was preferable and therefore rationalized that the rule "both reflects [as well as] protects the defendant's interest in retaining a chosen jury," and is, therefore, "an integral part of the constitutional guarantee against double jeopardy." 437 U.S. at 38, 98 S.Ct. at 2162.

■ It now becomes the duty of this court to render a decision in the instant case which conforms our rule concerning the attachment of jeopardy to the federal timetable, now sanctified as a constitutional

2. This conclusion was reached over the strong objection of three dissenting justices. In his dissent, Mr. Justice Powell wrote:

"The rule that jeopardy attaches in a jury trial at the moment the jury is sworn *is not* mandated by the Constitution. It is the product of historical accident, embodied in a Court decision without the slightest consideration of the policies it purports to serve. Because these policies would be served equally well by a rule fixing the attachment of jeopardy at the swearing of the first witness, I would uphold the Montana statute." (Emphasis added.)

imperative. This should not be done, however, without an examination of the origin of the Texas rule and the study of the policies behind its application.

The creation of a safeguard against double jeopardy appeared in the Constitution of the State of Texas in 1845:

"No person for the same offense shall be twice put in jeopardy of life or limb, nor shall a person be again put upon trial for the same offense after a verdict of not guilty; and the right of a trial by jury shall remain inviolate." Article I, § 12, Constitution of the State of Texas, Vol. I, Paschal's Annot. Digest, Laws of Texas, p. 48 (1873).

This language was somewhat modified in 1856 and incorporated into the Code of Criminal Procedure:

"No person for the same offense can be twice put in jeopardy of life or limb. This is intended to mean that no person can be subjected to a second prosecution for the same offense, after having been once prosecuted in a court of competent jurisdiction, and duly convicted." Article 2484 [18], Code Criminal Procedure, Vol. I, Paschal's Annot. Digest, Laws of Texas, p. 476 (1873).

These protections have consistently been included as they evolved with the constitutional law of this state. Article I, § 14 of the Texas Constitution now provides:

"No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

The statutory provision of the present day Code of Criminal Procedure still parallels the constitutional language. Article 1.10, V.A.C.C.P. (1965), provides:

"No person for the same offense shall be twice put in jeopardy of life or liberty; nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."

In perhaps the earliest judicial interpretation of the constitutional provisions, it appeared that Texas would require a final conviction before jeopardy would attach. *Moseley v. State*, 33 Tex. 671 (1870). However, this view was shortlived. In *Powell v. State*, 17 Tex.App. 345 (1884), the court adopted a procedure seemingly similar to the federal rule which we are now compelled to apply. In *Powell*, it was held that jeopardy attaches to a defendant when he is put to trial in a court of proper jurisdiction, under an indictment or information sufficient to confer that jurisdiction, and in which a jury has been impaneled and sworn. However, as this rule was applied in *Shoemaker v. State*, 58 Tex.Cr.App. 518, 126 S.W. 887 (1910), if, before a verdict was reached, "the state discovers that the bill of indictment is fatally defective, the court may dismiss, and such dismissal is not equivalent to a verdict, and the *jeopardy will not attach unless there is a valid bill of indictment.*" 126 S.W. at 888.[3] (Emphasis added.)

Although it had earlier origins,[4] the rule which eventually evolved into the now abro-

---

3. A similar interpretation was made in *Spicer v. State*, 78 Tex.Cr.App. 57, 179 S.W. 712 (1915).

4. See, *Steen v. State*, 92 Tex.Cr.R. 99, 242 S.W. 1047 (1922), where the court held as follows:

"Under the authorities we are of opinion that it should be stated as part of the definition of 'jeopardy' that one is not 'put upon trial' until the indictment or information is read to the jury and the plea of the accused is heard."

See also *Yerger v. State*, 41 S.W. 621 (Tex.Cr. App.1897). In addition to these provisions, statutes and holdings Article 33.03, V.A.C.C.P., 1965 [580], is noteworthy in this connection.

This article is instructive on the question of the longstanding rule on jeopardy by providing that where the defendant voluntarily absents himself after pleading to the indictment or information the trial may continue and it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial.

Perhaps in view of the revelation in *Crist v. Bretz*, supra, Article 33.03 was amended in 1979 adding the underlined portion below:

"In all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when the punishment or any part thereof is imprisonment in jail;

gated Texas procedure was perhaps best outlined in *Fann v. State*, 138 Tex.Cr.R. 580, 137 S.W.2d 1019 (1940). Quoting with approval from 12 Tex.Jur. 537, the court stressed the significance of the rule that jeopardy should attach at the point in the trial when the defendant, facing an impaneled and sworn jury, pleads to the indictment:

> "The plea of the defendant is an essential part of the preliminary proceedings, and until he has pleaded he is not in jeopardy, though the jury had been sworn to try him."

In addition, the court, focusing on the various and relevant questions of policy, advanced the following explanation of this procedure:

> " 'Though the jury has been impaneled and sworn, there is still no jeopardy, therefore no bar to second proceeding, unless the court is clothed with authority, and prior proceedings are such that a judgment upon the verdict duly returned will be valid . . . .. The plea commonly put in at the arraignment is an essential part of the proceeding, so that, *until an indicted person has pleaded, he is not in jeopardy, though a jury has been sworn to try him . . . .*' " (Citations omitted.) (Emphasis added.)

Therefore, operating under the long established premise[5] that where no plea is entered in a trial, the trial is a nullity as there is no issue for either the jury or the court to determine, this court has consistently applied the rule that jeopardy does not attach until the indictment has been pled to. These considerations of policy which have long been scrutinized by both the state and federal judiciary should not be cast aside at the instance or purpose of mere conformity. Nonetheless, we now abandon these historically sound considerations of procedure and policy for an ill-disguised mandate for uniformity.[6]

Judicial economy and the saving of crucial time in the judicial process will be encroached upon by this decision. It has been a growing practice for courts to conduct the voir dire examination of the jury panels and the selection of the juries in several cases at the commencement of a week and then try these cases as they are later reached on the docket in that week, the next week or so on. Today's decision, compelled by *Crist*, may well foreclose an economy designed practice because of the dangers involved in perhaps permitting an obviously guilty defendant charged with murder to go free merely because of a trial court's efforts to save the time of citizens

---

provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion. When the record in the appellate court shows that the defendant was present at the commencement, or any portion of the trial, it shall be presumed in the absence of all evidence in the record to the contrary that he was present during the whole trial. Provided, however, that the presence of the defendant shall not be required at the hearing on the motion for new trial in any misdemeanor case." (Emphasis added.)

5. See, *Fann v. State*, supra, and authorities cited therein.

6. Although clothed in a weave of tailored constitutional fiber, the decision in *Crist*, we are convinced, is in reality nothing more than a requirement for consistency. Certainly, consistency and uniformity must be revered as vital qualities in any system of jurisprudence. But, a sanction which, in essence, requires consistency merely to achieve consistency, is, at best, injudicious and ill-advised. Chief Justice Burger's dissent in *Crist* is enlightening in this regard:

> ". . . This is but another example of how constitutional guarantees are trivialized by the insistence on mechanical uniformity between state and federal practice. There is, of course, no reason why the state and federal rules must be the same. In the period between the swearing of the jury and the swearing of the first witness, the concerns underlying the constitutional guarantee against double jeopardy are simply not threatened in any meaningful sense even on the least sanguine of assumptions about prosecutorial behavior. We should be cautious about constitutionalizing every procedural device found useful in federal courts, thereby foreclosing the States from experimentation with different approaches which are equally compatible with constitutional principles. All things 'good' or 'desirable' are not mandated by the Constitution . . . .."

serving as jurors and the taxpayers' money in the county where the alleged offense occurred and no issue has been joined by a plea of the accused to the indictment or information. It may well be suggested that we adopt the federal rules of criminal procedure and that we be subject to the changes or revisions, beyond our control, whenever made. So much for federalism.

We now turn to the arguments raised by the amicus curiae brief filed by the Attorney General of the State of Texas. It is contended there, that the Supreme Court's ruling in *Crist* should be given only prospective effect, arguing that *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973), controls our determination of this issue. In *Robinson*, the criteria for determining the retroactivity of decisions involving the double jeopardy clause of the Fifth Amendment were enunciated. There, the Supreme Court noted that the traditional analysis as embodied in the decision of *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which concentrates on protecting "the very integrity of the fact-finding process," is "not appropriate" in determining such issues in double jeopardy decisions. However, in the course of determining that different considerations applied in determining which constitutional doctrines should be considered retroactive in their application, the Supreme Court did not disturb one of the underlying considerations to the question of retroactive application. This consideration was recognized in *Linkletter*, supra, wherein it was made clear that a question of retroactive application only arises when "final" judgments are brought before the court for a determination of whether an intervening constitutional doctrine applies. In *Linkletter* it was held:

> "By *final* we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in *Mapp v. Ohio* [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081]." 381 U.S. at 622, note 5, 85 S.Ct. at 1734 n. 5. (Emphasis added.)

The holding in *Linkletter* clearly emphasizes the initial requirement that a "final" judgment be under consideration before a new constitutional doctrine should be applied retroactively to it.

 It is clear that the appellant's conviction in the instant case was not "final" in the context of *Linkletter* or under the facts of *Robinson v. Neil*, supra. This is true, because this remand from the United States Supreme Court is a consequence of appellant's timely petition for certiorari to this court. Moreover, as noted in *Linkletter*, supra, although *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), was not to be applied retroactively to convictions that became final prior to that decision, it was applied to "cases still pending on direct review at the time it was rendered." (Citations omitted.) In the instant case, the appellant's cause was on direct review at the time *Crist v. Bretz*, supra, was decided.

Therefore, no determination need be made whether *Crist* is to be given retroactive determination under the guidelines set forth in *Robinson v. Neil*, supra. We express no view on whether *Crist* is retroactive to those convictions which became final prior to the decision. This we reserve for another day.

Giving application to the directive of the United States Supreme Court in this cause, we set aside the original judgment of this court and withdraw our mandate, reverse the conviction and remand to the trial court with orders that the prosecution be dismissed on the basis of the principle of double jeopardy.

DOUGLAS, ODOM and PHILLIPS, JJ., concur in the result.

CLINTON, J., not participating.