611 S.W.2d 880 (1980)
In the Matter of D. M.
No. 9210.
Court of Civil Appeals of Texas, Amarillo.
December 31, 1980.
*882 McGowan & McGowan, P. C., Bradford L. Moore, Brownfield, for appellant.
G. Dwayne Pruitt, Brownfield, for appellee.
REYNOLDS, Chief Justice.
Eighteen year old D. M. appeals from an order of the juvenile court of Terry County waiving its exclusive original jurisdiction and transferring him to the district court for criminal proceedings. D. M. contends the order is (1) barred by his constitutional protection for prior jeopardy, (2) void for lack of juvenile court jurisdiction, and violative of both (3) his constitutional right to a speedy trial and (4) the statutory guarantees afforded him by the Texas Family Code. Measured against the record, none of the contentions are developed to the status of reversible error. Affirmed.
The appellate record, albeit lacking preciseness in some details, suffices to record these facts: On 6 October 1978, D. M.'s father escorted him to the sheriff's office in Terry County. There, D. M., after receiving the "Miranda" warning from a judge, completed his handwritten statement containing an admission that he had twice shot the deceased, identified as Jose Sanchez, some four months previously in Terry County.[1] D. M. was arrested. Giving his age as seventeen, D. M. was treated as an adult and indicted for the murder of Sanchez. D. M. remained in jail for 101 days until he, represented by counsel, was released on bond. In July of 1979, nine months after his arrest, D. M. was adjudged guilty of murder by a Terry County district court jury. While the jury was deliberating on punishment, D. M.'s counsel, who had represented D. M. in all proceedings and to whom D. M. repeatedly told he was seventeen at the time of the alleged offense, moved for abatement of the criminal proceedings on the ground the court lacked jurisdiction because D. M., as shown by a birth certificate then revealed to counsel and introduced in evidence, was only sixteen on the date of the offense for which D. M. had been found guilty. The birth certificate carried D. M.'s date of birth as 2 October 1961. The motion was granted.
Thereafter on 13 August 1979, the State filed its petition with the juvenile court of Terry County, seeking to have D. M., then seventeen years of age, adjudged a delinquent for the conduct giving rise to the prior criminal proceedings. By agreement of the parties, a hearing date of 8 November 1979 was set. On 6 November 1979, the State filed its petition for waiver of jurisdiction and discretionary transfer to the criminal court for proceedings on the same offense. On that date summons was served on both D. M. and his father.
Following a bench trial on 8 November 1979, the court signed an order waiving its exclusive original jurisdiction and transferring D. M. to the district court for criminal proceedings. From that order, D. M. brings this appeal on contentions which are topically segregated for consideration.

*883 1. Double Jeopardy
Initially, D. M. contends that the transfer order is barred by his constitutional protection for prior jeopardy. U.S.Const. Amend. V, XIV;[2] Tex.Const. art. I, § 14.[3] Specifically, D. M. submits that constitutional jeopardy attached when, as announced in McElwee v. State, 589 S.W.2d 455 (Tex.Cr.App.1979), the jury, which found him guilty of murder, was impaneled and sworn in the district court and, thus, the transfer order placed him in jeopardy for a second time. D. M.'s position is untenable for two reasons.
First, D. M. was not put in jeopardy at the Terry County district court trial, because that court had no jurisdiction over the prior proceedings. Although McElwee v. State, supra, does prescribe that jeopardy attaches when the jury is impaneled and sworn, the precept becomes operative only when, as in McElwee, the court has jurisdiction of the proceedings, for if the court has no jurisdiction, all proceedings are absolutely void and, therefore, no bar to subsequent proceedings in a court which has jurisdiction. Ball v. United States, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 41 L.Ed. 300 (1896).
By his evidence, D. M. was sixteen years of age at the time of the offense charged by indictment in the district court. The juvenile court, not the district court, was vested with exclusive original jurisdiction of the proceedings. Tex.Fam.Code Ann. § 51.04 (Vernon Supp.1980).[4] The juvenile court jurisdiction may be waived, Section 54.02 (Vernon 1975; Vernon Supp.1980), but it is undisputed that the juvenile court had not waived its jurisdiction at the time of the district court proceedings. Therefore, at all times from the indictment through the abortive trial, the Terry County district court did not have jurisdiction. Section 51.08 (Vernon 1975); Tex.Penal Code Ann. § 8.07(b) (Vernon Supp.1980-81); Bannister v. State, 552 S.W.2d 124, 129-30 (Tex.Cr. App.1977). Hence, jurisdiction of the court to try the prior case being an essential prerequisite where jeopardy is pleaded, McAfee v. State, 363 S.W.2d 941 (Tex.Cr. App.1963), it follows that D. M. was not put in jeopardy at the prior district court proceedings.[5]
Second, jeopardy is not present in proceedings that are not "essentially criminal." Breed v. Jones, 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975). Here, the juvenile court proceeding was not an adjudicatory hearing to determine whether D. M. committed the act on which the State predicated its motion; instead, the hearing was to determine whether D. M. should be subjected to the juvenile court system or should be transferred to the adult court for criminal proceedings. Resultingly, jeopardy was not present in the juvenile court hearing and, a fortiori, the transfer order *884 itself did not place D. M. in jeopardy. See Breed v. Jones, supra.[6]

2. Juvenile Court Jurisdiction
D. M. has lodged a two-prong challenge to the jurisdiction of the juvenile court to proceed as it did in this matter. Under this record, neither challenge is tenable.
At the outset, D. M. asserts that because he became eighteen years of age after the State invoked the court's jurisdiction to adjudge him a delinquent and before the State moved, and the court granted, a waiver of exclusive original jurisdiction and transfer to the criminal court, the juvenile court only had jurisdiction to adjudge him a delinquent. D. M. relies on Sections 51.02 and 54.02 as originally enacted;[7] but whatever force those sections might lend to D. M.'s assertion is academic in the face of the 1975 amendments to the Texas Family Code, which included new provisions authorizing the juvenile court's action in D. M.'s situation. Section 54.02(j), et seq. (Vernon Supp.1980). The new provisions read:
(j) The juvenile court may waive its exclusive original jurisdiction and transfer a person to the appropriate district court or criminal district court for criminal proceedings if:
(1) the person is 18 years of age or older;
(2) the person was 15 years of age or older and under 17 years of age at the time he is alleged to have committed a felony;
(3) no adjudication concerning the alleged offense has been made or no adjudication hearing concerning the offense has been conducted; and
(4) the juvenile court finds from a preponderance of the evidence that after due diligence of the state it was not practicable to proceed in juvenile court before the 18th birthday of the person because:
(A) the state did not have probable cause to proceed in juvenile court and new evidence has been found since the 18th birthday of the person; or
(B) the person could not be found.
(k) The petition and notice requirements of Sections 53.04, 53.05, 53.06, and 53.07 of this code must be satisfied, and the summons must state that the hearing is for the purpose of considering waiver of jurisdiction under Subsection (j) of this section.
(l) The juvenile court shall conduct a hearing without a jury to consider waiver of jurisdiction under Subsection (j) of this section.
Again, the exclusive original jurisdiction over these matters is vested in the juvenile court. Section 51.04 (Vernon Supp.1980).
D. M. concedes that if the juvenile court's jurisdiction was properly invoked, the mere *885 fact that he reached majority does not cause the court to lose jurisdiction. Matter of J. R. C., 551 S.W.2d 748, 755 (Tex.Civ. App.Texarkana 1977, writ ref'd n. r. e.). Nevertheless, he urges that the State failed to prove it used due diligence and it was impracticable to proceed prior to his eighteenth birthday. The preponderance of the evidence is to the contrary.
When it was evidenced during the district court proceedings that D. M. was subject to the jurisdiction of the juvenile court, the State, through the probation officer, investigated the alternatives available. After the investigation was completed, D. M. could not be found, despite repeated attempts to locate him, until the day before the State moved the juvenile court to waive its exclusive original jurisdiction and transfer D. M. to the district court for criminal proceedings. D. M. does not suggest the evidence is otherwise. The proof meets the statutory preponderance of the evidence standard. Section 54.02(j)(4) (Vernon Supp. 1980).
Next, D. M. asserts that the court lacked jurisdiction over his person because the summons served on him was fatally defective for failing to contain the language of Section 54.02(b) (Vernon 1975). What D. M. overlooks is that the proceeding was conducted pursuant to Section 54.02(j), et seq. (Vernon Supp.1980), and the summons served on him precisely tracks the language of Section 54.02(k) (Vernon Supp. 1980). If the summons contains the statutory language, then there is no linguistic defect. Cf. M.______ v. State, 520 S.W.2d 878, 880 (Tex.Civ.App.San Antonio 1975, no writ) (holding that the mandatory language of the statute must be followed).

3. Speedy Trial
D. M. contends that his constitutional right to a speedy trial as a juvenile was violated by the delay, which he attributes to the State, of more than a year following his arrest until the juvenile court hearing. The parties propose that D. M.'s contention is to be measured by the four factors set forth in Grayless v. State, 567 S.W.2d 216, 220 (Tex. Cr.App.1978), viz.: (1) length of delay; (2) reason for the delay; (3) D. M.'s assertion of his right; and (4) prejudice to him resulting from the delay. While the four factors are neither exclusive nor invested with talismanic qualities, they will be considered in resolving the contention by balancing the conduct of both parties. Barker v. Wingo, 407 U.S. 514, 530-33, 92 S.Ct. 2182, 2191-93, 33 L.Ed.2d 101 (1972).
The delay of thirteen months is not, per se, a violation of D. M.'s right to a speedy trial; it is but a circumstance requiring further consideration of his contention. McCarty v. State, 498 S.W.2d 212, 215 (Tex.Cr.App.1973). The reason for the delay did not stem from any deliberate attempt by the State to forestall proceedings; instead, the delay resulted directly from D. M.'s misrepresentationa repeated one, according to his attorneythat he was seventeen at the time of the offense charged. One who is responsible for the delay, or a considerable portion thereof, is in no position to fault the other party. Matter of J. R. C., supra, at 755. Accord, R. E. M. v. State, 569 S.W.2d 613, 616 (Tex.Civ.App. Waco 1978, writ ref'd n. r. e.).
Furthermore, D. M. never requested, so far as the record shows, the speedy trial which he now claims was denied to him.[8] The first mention he made of a speedy trial was his claim of its denial when this cause now on appeal was called for a hearing. A defendant has some responsibility to assert a speedy trial claim, and his failure to assert the right makes it difficult for him to prove that he was denied a speedy trial. Barker v. Wingo, supra, 407 U.S. at 529, 532, 92 S.Ct. at 2193; McCarty v. State, supra, at 215.
As to the last factor, D. M. submits that the delay has prejudiced him by requiring him to answer in the criminal court instead of in the juvenile court. This claim *886 of prejudice is not one of the three interests generally considered in determining prejudice to the defendant;[9] but, assuming the bare submission is some showing of prejudice, it is not sufficient, in and of itself, to require a finding of the denial of the right, it being but one condition to be considered with the other relevant factors. Barker v. Wingo, supra, 407 U.S. at 533, 92 S.Ct. at 2193.
On balance, then, it is concluded that, under this record, there was no denial of D. M.'s right to a speedy trial as a juvenile.

4. Texas Family Code Guarantees
Finally, D. M. contends that because he was, in fact, a juvenile on the date of the offense charged, the State, by treating him as an adult until his true age was fixed, so abridged the statutory guarantees afforded him by the Texas Family Code that further proceedings should be barred. The guarantees of which he speaks are the procedural, detention and privacy rights that are unique to youthful offenders. He does not complain of any violation of these guarantees after his true age was established.
The guarantees attach under the proceedings provided in Title 3 of Texas Family Code. Although the juvenile court is given jurisdiction of these proceedings, there is no presumption of jurisdiction by the juvenile court; it must be alleged and proved. In re J. T., 526 S.W.2d 646, 647-48 (Tex.Civ.App. El Paso 1975, no writ). D. M. does not charge the State had any notice, or even suggest the State was in a position to allege and prove, that the juvenile court had jurisdiction of the proceedings before he came forward with proof of his true age.
Recognizing the situation where, as here, the jurisdiction of the juvenile court may be revealed during criminal proceedings, the Legislature provided for the transfer of the case to the juvenile court. Section 51.08 (Vernon 1975). In that situation, obviously, there was no intent to bar juvenile court proceedings because the guarantees of the Texas Family Code were not sooner afforded. Conformably, it cannot be reasonably said that one, who negates the operation of the Texas Family Code guarantees by misrepresenting his age, is entitled to claim the benefit of the guarantees during the period of his misrepresentation.
The judgment is affirmed.
NOTES
[1] The statement was found to be inadmissible as evidence at the separate adult and juvenile proceedings later mentioned.
[2] The Fifth Amendment to the United States Constitution reads, in part: "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb ...." This double jeopardy clause is made applicable to the states through the Fourteenth Amendment to the United States Constitution. Benton v. Maryland, 395 U.S. 784, 787, 89 S.Ct. 2056, 2058, 23 L.Ed.2d 707 (1969).
[3] The Texas Constitution states the double jeopardy concept thusly: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction."
[4] Unless otherwise noted, all references to sections are to the sections of the Texas Family Code (Vernon 1975; Vernon Supp.1980), the reference being indexed to the published volume or to the pocket part supplement.
[5] Inserted at the forefront of D. M.'s argument is a statement "that the State's action denies his right to due process of law as guaranteed by the Constitution." Though having a genesis in the point of error, the statement is neither developed by argument nor supported by the citation of authority so as to make it a viable point under the briefing rules. Tex.R.Civ.P. 418(e). In context, then, the stated proposition would follow only if D. M. had been put in jeopardy at the district court proceedings and, because he was not, the statement is not further addressed.
[6] In concluding his double jeopardy argument, D. M. theorizes, sans a separate point of error dictated by Rule 418(d), Texas Rules of Civil Procedure, for consideration of a matter, that the determination of his guilt by the district court jury equates to an adjudication hearing with a determination of guilt under the Texas Family Code, and prohibits the transfer ordered by the juvenile court. Tex.Fam.Code Ann. § 54.02 (Vernon Supp.1980). In the light of what has been written in the body of the opinion, a brief, but sufficient, response is that because all proceedings in the district court were absolutely void for lack of jurisdiction, and the juvenile court did not hold an adjudicatory hearing, there has been no determination of D. M.'s guilt.
[7] At that time, the wording of the statutes, enacted effective 1 September 1973, created a potential hiatus in the jurisdiction of the courts over a person who committed a felony prior to becoming seventeen, but who was not called to account until after the person reached age eighteen. McKnight, Texas Family Code: Table of Sections Affected by 1975 Amendments, 8 Tex. Tech.L.Rev. 144-46 (1976). The potential achieved actuality in Bannister v. State, 552 S.W.2d 124 (Tex.Cr.App.1977), which established that, prior to the 1975 amendments to the Texas Family Code, the criminal court lacked jurisdiction if the alleged offense was committed prior to the person's seventeenth birthday and the juvenile court's jurisdiction had not been waived, and the juvenile court lacked jurisdiction to proceed against one, even to conduct a waiver proceeding, after he became eighteen.
[8] The State represents in its brief, and D. M. does not deny, that D. M. "signed a written waiver of a speedy trial;" however, no such instrument is contained in the appellate record.
[9] The three interests to be considered in determining prejudice to the defendant are: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. See, e. g., McCarty v. State, 498 S.W.2d 212, 218 (Tex.Cr.App.1973).