Aaron Dwayne PROCTOR and Jonathan
L. Lemell, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 477–91, 478–91.

Court of Criminal Appeals of Texas,
En Banc.

Oct. 7, 1992.

Order on State's Motion for
Rehearing Nov. 25, 1992.

Michael B. Charlton, on appeal only,
Houston, for Proctor.

Robert A. Morrow and Janet Morrow,
court-appointed on appeal only, Houston,
for Lemell.

John B. Holmes, Jr., Dist. Atty., and
Timothy G. Taft, Rusty Hardin and Kath-
erine Haden, Asst. Dist. Attys., Houston,
Robert Huttash, State's Atty., Austin, for
the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellants, Aaron Dwayne Proctor and Jonathan L. Lemell, were tried jointly before a Harris County jury in April 1988 and found guilty of aggravated robbery, as defined in § 29.03 of the Texas Penal Code. On appeal, appellants contended, *inter alia*, that their convictions were barred by the double jeopardy clauses of the Texas and United States constitutions. The Eleventh Court of Appeals agreed with that contention and reversed. *Proctor v. State*, 806 S.W.2d 252 (Tex.App.—Eastland 1990); *Lemell v. State*, No. 11–88–150–CR (Tex. App.—Eastland 1990) (unpublished). We granted the State's petitions for discretionary review, pursuant to Rule 200(c)(2) of the Texas Rules of Appellate Procedure, to determine whether the court of appeals' holding was correct. We will reverse.

### I

In April 1982, appellants were charged in separate but identical Harris County indictments with the capital murder of Wing K. Lew (paragraph one of each indictment); the murder of Wing K. Lew by intentionally causing his death (paragraph two); the murder of Wing K. Lew by intending to cause serious bodily injury to him (paragraph three); aggravated robbery by threatening or placing Yit Oi Lew (Wing K. Lew's wife) in fear of imminent bodily injury or death (paragraph four); and aggravated robbery by causing serious bodily injury to Wing K. Lew (paragraph five). The two causes were consolidated for trial.

At a November 8, 1982, pretrial hearing, at which appeared defense counsel for both appellants, the following transpired:

PROSECUTOR: Your Honor, at this time the State is going to move to abandon all paragraphs in the indictments except the fourth one, which alleges aggravated robbery and is the paragraph that alleges during the course of robbery that Mrs. Lew was placed in fear of imminent bodily injury and death.

THE COURT: You are abandoning paragraphs one, two, three, and five.

PROSECUTOR: In conjunction, the State would file this oral motion to prohibit the attorneys from either side trying to voir dire the jury or discuss with them what they would do in an aggravated robbery in which there is a killing. Since it is no longer raised by the indictment, then we would be getting into the facts of the case, would be the State's position.

THE COURT: Mr. O'Brien [Defense Counsel], what is your position?

MR. O'BRIEN: Your Honor, I don't have my copy of the indictment.

THE COURT: What he has done is abandon all paragraphs in the indictment except the paragraph alleging aggravated robbery. He has then filed an oral motion in limine prohibiting, if the Court grants it, from any defendant mentioning the fact there was a killing during the process of the robbery since it is no longer alleged in the indictment.

\* \* \* \* \* \*

THE COURT: Your motion to abandon paragraphs one, two, three, and five will be granted. That is as to each defendant, is that correct?

PROSECUTOR: Yes, sir.

THE COURT: They will each be tried on paragraph four of each indictment, that alleging the offense of aggravated robbery. And your motion in limine will be granted.

In addition, the docket sheets in both causes contain entries dated November 8, 1982, which recite the following:

The Defendant appeared in person with counsel.... Both sides announced ready for trial. A jury panel of 50 was summoned and arrived at 1:45. On motion of the State, and with permission of the court, 1, 2, 3, & 5 paragraphs of the indictment is [sic] abandoned and dismissed.

The jury was impaneled and sworn on November 12, 1982. In keeping with the prosecutor's abandonment of indictment paragraphs one, two, three, and five, the only offense later submitted to the jury in the trial court's charge was the offense

alleged in the fourth paragraph of each indictment, i.e., aggravated robbery by threatening or placing Yit Oi Lew in fear of imminent bodily injury or death. The jury found appellants guilty of that offense. Subsequently, the Fourteenth Court of Appeals, in unpublished opinions, reversed both convictions because of trial error.

In January 1988, appellants were reindicted on three counts in separate, but again identical, indictments. Each of these indictments included a count charging aggravated robbery by causing serious bodily injury to Wing K. Lew, the same charge previously alleged against appellants in the fifth paragraph of each of the 1982 indictments. In November 1988, appellants were again jointly tried, and this time only the count alleging aggravated robbery by causing serious bodily injury to Wing K. Lew was submitted to the jury. Again, the jury found appellants guilty.

At a hearing held a few days after the 1988 trial, the prosecutor of the 1982 trial confirmed under oath what the record of the 1982 trial already showed, i.e., that before the 1982 trial he abandoned the first, second, third, and fifth paragraphs of each of the 1982 indictments. The prosecutor testified further that he had intended those paragraphs to "remain active" for the purposes of a possible future prosecution.

Despite the record of the 1982 trial and the prosecutor's testimony in 1988, the Eleventh Court of Appeals reversed appellants' 1988 convictions on the basis of the double jeopardy clauses of the Texas and United States constitutions. The court explained in its identical opinions in both causes:

Appellant[s] in the instant case [were] convicted of aggravated robbery by causing serious bodily injury to Wing K. Lew.... This count was abandoned after jeopardy attached in the 1982 trial. The abandonment was tantamount to an acquittal of that offense. Appellant[s] cannot, in a subsequent trial, be prosecuted on the abandoned count.

*Proctor v. State*, 806 S.W.2d at 252, and *Lemell v. State*, slip op. at 5–6. It is from these holdings that the State sought discretionary review.

## II

Article I, § 14, of the Texas Constitution provides that "[n]o person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." Similarly, the double jeopardy clause of the Fifth Amendment, made applicable to the States by the due process clause of the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), provides that "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb."

When we interpret broadly-phrased constitutional provisions such as these, we seek to effectuate the general principles suggested by the language of the text. One of the principles suggested by the language of the double jeopardy clauses is that the Government, with all its resources, must not be allowed to make repeated attempts to convict an individual for an offense. Thus, the double jeopardy clauses reflect a concern that if the Government may repeatedly reprosecute, it will have the power to harass our citizens as well as to gain an unfair advantage from what it learns in the earlier prosecutions about the strengths of the defense case and the weaknesses of its own.

In line with this understanding of the double jeopardy clauses, we have repeatedly recognized that any criminal charge that is abandoned or dismissed on the prosecution's motion after jeopardy "attaches," i.e., after an individual is placed in jeopardy of life or liberty, may not be retried. *Garza v. State*, 658 S.W.2d 152, 154–155 (Tex.Cr.App.1982); *McElwee v. State*, 589 S.W.2d 455, 460 (Tex.Cr.App. 1979); *Ex parte Scelles*, 511 S.W.2d 300, 301 (Tex.Cr.App.1974); compare *Ex parte McAfee*, 761 S.W.2d 771 (Tex.Cr.App.1988). If a charge is still pending at the moment

jeopardy attaches, a defendant is entitled to expect the State to proceed to trial on that charge or lose the opportunity forever. On the other hand, if a charge is affirmatively abandoned or dismissed with the trial court's permission *before* jeopardy attaches, then the Government is free to press that charge at a later time. *Ex parte Preston*, 833 S.W.2d 515 (Tex.Cr.App.1992); *Patterson v. State*, 581 S.W.2d 696, 697 (Tex.Cr.App.1979); *Ochoa v. State*, 492 S.W.2d 576, 577 (Tex.Cr.App.1973).

■ As for the question when jeopardy "attaches" in a jury trial, that, too, has long been settled. For the purposes of both our state and federal double jeopardy clauses, jeopardy attaches in a jury trial when the jury is impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *State v. Torres*, 805 S.W.2d 418, 420 (Tex.Cr.App.1991); *Garza v. State*, 658 S.W.2d at 155.

### III

■ The question before us is, then, whether the charge of which appellants were found guilty at the 1988 trial—aggravated robbery by causing serious bodily injury to Wing K. Lew—was affirmatively abandoned or dismissed with the permission of the court before the jury was impaneled and sworn at the 1982 trial. The record, as previously discussed, plainly shows that the answer to that question is yes, and we so hold. The charge pressed at the 1988 trial was adequately abandoned before jeopardy attached at the 1982 trial and was, therefore, properly preserved for future prosecution.

Our holding today is not a novel one. For example, in *Patterson v. State*, 581 S.W.2d 696, we faced a similar situation and resolved it the same way. There, the defendant, James Patterson

> was [originally] charged in a two-count indictment with the offenses of possession of marihuana and possession of a firearm by a felon. *Before a jury was impaneled and sworn the State elected to proceed on the count for possession of marihuana;* the [defendant] was convicted of that offense. The [defendant] was reindicted for the offense of possession of a firearm by a felon and brought to trial [a second time]. [His] plea of jeopardy in the latter proceeding was overruled by the trial court.

*Patterson*, 581 S.W.2d at 697 (footnote omitted; emphasis added). We affirmed the overruling of Patterson's double jeopardy plea at his second trial, because at his first trial the State had abandoned the firearm charge *before* jeopardy had attached. Furthermore, the record of Patterson's first trial showed that the abandonment of the firearm count was done in open court with defense counsel present. See *Ex parte Preston*, 833 S.W.2d at 518.

■ Our holding in these causes today stands in contradistinction to our holding in *Ex parte Preston*, 833 S.W.2d 515, decided earlier this Term. In *Preston*, the defendant was originally charged in a single indictment with three counts of aggravated robbery. Only the second count, however, was submitted to the jury. The defendant was subsequently reindicted and convicted in a second trial, over his plea of double jeopardy, for the offenses alleged in the first and third counts of the original indictment. We reversed the convictions resulting from the second trial, holding them barred by the federal double jeopardy clause, because there was nothing in the record showing that the charges in question had been affirmatively abandoned or dismissed [1] with the permission of the court

---

1. We observe that, in large part, the difficulty experienced in this area of the law has been caused by assumptions that the use of particular terms of art ("abandon," "dismiss," "sever," "waive," etc.) is critical to the disposition of a jeopardy question. We have contributed, perhaps, to the perpetuation of this confusion by failing to address it. We wish now to make it clear that it is of no moment that the State uses one term rather than another. It is also of no moment whether the State informally and verbally "abandons" a prosecution as opposed to formally pursuing a written "dismissal" pursuant to Article 32.02 of the Texas Code of Criminal Procedure. What is essential is that the State, on the record with the permission of the trial judge, abandon, dismiss, sever, or take some other affirmative action *before jeopardy attaches* to preserve the charge for future prosecution. The lexicon used by the trial prosecutor

before jeopardy had attached at the first trial. Thus, the facts of *Preston* were distinctly different from those in the causes before us today.

The judgments of the court of appeals are REVERSED and the causes REMANDED to that court for consideration of appellants' remaining points of error.

CLINTON, J., adhering to procedural requisites set out in his concurring opinion in *Preston v. State*, 833 S.W.2d at 525, joins only the judgment of the Court.

BAIRD, J., not participating.

OVERSTREET, Judge, concurring in part and dissenting in part.

The majority has this day correctly decided that the prosecutor did, in fact, properly abandon the counts in question on the record before jeopardy had attached during the first trial in 1982. I write to concur in this result; however, I respectfully dissent to that portion of the opinion which designates an inappropriate portion of the record as reflecting the valid abandonment.

## I.

The majority reaches its conclusion by presuming a set of facts from the trial court's 1982 docket sheets and the prosecutor's testimony following the second trial in 1988. The docket sheet entries, which the majority presumes are correct, note that the charge in question was abandoned and dismissed by the prosecution four days before the jury was impaneled and sworn. This leads to an unquestioned reliability upon the docket sheets which may or may not be made contemporaneously with the date of the docketed entry. A docket entry is a memorandum made for the court's, judge's, and staff's information and forms no part of the judgment actually entered. 47 TEX.JUR.3RD § 15.

I differ with the majority opinion that the prosecutor's testimony at the post-trial

hearing in 1988 corroborated the docket sheets, and that the presumptions from the docket entries resolve the issue. The prosecutor candidly denies contemporaneous knowledge of the docket sheet entries. He testified at the 1988 post-trial hearing that his intent was not to dismiss but to abandon only; and that he reindicted, among other reasons because he noticed the entry on the docket sheets of "dismissal" of paragraphs contrary to his intent. He then proceeded to define his concept of the difference in abandonment versus dismissal. While in this factual situation, the two do have the same effect for jeopardy purposes, the two may differ in effect on the statute of limitations when applicable. This explains to some extent the prosecutor's avid repudiation of the two of them being entered into the docket sheet simultaneously.[1]

It is apparent from his testimony that the prosecutor did not recall having performed any affirmative act of abandonment and so was arguing that if he was passive, then all paragraphs should have been active "depending on what the law is in that area." The defense, on the other hand, is requesting that something more be required. This leads to the primary concern of this appeal, which is to decipher just what the law is in this area.

## II.

The real concern both in this matter as well as *Ex parte Preston*, 833 S.W.2d 515 (Tex.Cr.App.1992), is whether some overt and affirmative act must be taken on the part of the prosecutor to make the abandonment effective or can the State presume that its intent is known if it remains passive. When and to what does jeopardy attach was not the dilemma. Exactly what are the minimal requirements for effecting abandonment was the dilemma which concerned all parties.

is unimportant to the ultimate disposition of the jeopardy claim at hand.

**1.** This testimony repudiates the presumption of correctness of the docket entry. The prosecutor "intended" abandonment only. He wanted the

counts to remain active without a need to reindict. The dismissal meant he had to reindict in order to toll the statute and keep the counts active.

We are deciding today that some affirmative act is required. I hesitate to rely on a docket entry and the prosecutor's partial renunciation of it years later to resolve whether, when, and where the affirmative act occurred. I believe it more prudent to require a showing in the statement of facts where the party actively abandons the count. While the prosecutor did not recall, he did in fact effect a valid abandonment in the 1982 pretrial hearings, on the record, in the presence of defendants, and with the permission of the court.[2] These docket entries did not correctly reflect the record insomuch as there was no discussion or agreement to "dismiss," but only to "abandon" the relevant counts. However, given the record reflected in footnote 2, there is no need to accord the 1982 docket sheet entries with the 1988 hearings.

I would hold today that jeopardy does not bar retrial not because of what the docket sheet notes or because of what the prosecutor "intends" it note; instead, the count is active because the prosecutor unwittingly did it right in 1982. In summary, the relevant portion of the record reflects that the State properly abandoned all but the aggravated robbery count in a pretrial proceeding immediately prior to voir dire during the first trial in 1982, thereby effectively preserving the count in question.

I agree with the majority that in order for the act of abandonment to be effective, it must be affirmative and on the record, prior to jeopardy attaching. As noted, there is nothing novel about this concept. "[S]uch abandonment or dismissal must be requested in open court with the defendant present ..." Slip Opinion at 3. Jeopardy attaches to all counts which are present in the indictment which have not been abandoned, dismissed or severed on the record, prior to the jury being sworn. *Patterson v. State*, 581 S.W.2d 696. I otherwise concur with the results and the distinguishing of *Ex parte Preston*, 833 S.W.2d 515 (Tex. Cr.App.1992), insomuch as that record in *Preston*, supra, did not reflect abandonment or dismissal on the record prior to jeopardy attaching.

## ORDER ON STATE'S MOTIONS FOR REHEARING

PER CURIAM.

The appellants were jointly tried and convicted of aggravated robbery. The jury assessed Proctor's punishment at life and Lemell's punishment at sixty-five (65) years and a Five Thousand Dollar ($5,000.00) fine.

On direct appeal, the appellants maintained their convictions were barred by jeopardy. The Eleventh Court of Appeals agreed, reversed and ordered the prosecutions dismissed. *Proctor v. State*, 806 S.W.2d 252 (Tex.App.—Eastland 1990); *Lemell v. State*, No. 11–88–150–CR (Tex. App.—Eastland, delivered December 20, 1990).

We granted the State's petitions to review the Court of Appeals' decisions. We ultimately determined the Court of Appeals erred in its disposition of the appellants' jeopardy points of error, reversed the judgments of the Court of Appeals and remanded the causes for consideration of the appellants' remaining points of error. See page 2.

Despite having prevailed on both petitions, the State, through Harris County

---

2. "MR. HARDIN: Your Honor, at this time the State is going to move to abandon all paragraphs(sic) in the Indictments except the fourth one which alleges aggravated robbery and is the paragraph [sic] that alleges during the course of robbery that Mrs. Lew was placed in fear of imminent bodily injury and death.

THE COURT: You are abandoning paragraphs [sic] one (1), two (2), three (3) and five (5).

\* \* \* \* \* \*

THE COURT: In other words, you are trying straight 'aggravated robbery.'

MR. HARDIN: Yes, sir. My Indictment doesn't allege a shooting.

\* \* \* \* \* \*

THE COURT: Your Motion to Abandon paragraphs [sic] one (1), two (2), three (3), and five (5) will be granted. That is as to each Defendant, is that correct?"

MR. HARDIN: Yes, sir.

Assistant District Attorney, Timothy G. Taft, has filed motions for rehearing. The motions were filed with the Clerk of this Court on October 23, 1992. Each motion contains four grounds for rehearing challenging the opinion delivered October 7, 1992.

Aside from the grounds for rehearing, the motions present a more serious matter. Each motion contains highly offensive, inappropriate, and scurrilous accusations against this Court. The motions accuse this Court of being sloppy (pages i, 1, 6, and 12); dishonest (pages i, 1, 11 and 12); and hypocritical (page 15). The motions charge this Court with being intentionally careless in order to achieve a desired result (page 6). The motions claim this Court treats the State as a second-class party (page 7). The motions question the lengths to which this Court is allegedly willing to go in order to cover for one of its own (page 8). The motions suggest the delivery of a per curiam opinion is cowardly (page 9). Finally, the motions accuse this Court of violating the Code of Judicial Conduct (page 15).

Advocacy, whether in a trial court or appellate court, is not incompatible with due respect and civility. No attorney appearing in this Court furthers the cause of justice by filing a document designed to belittle, degrade, obstruct, interrupt, prevent, or embarrass this Court and the administration of justice. In our view, the State's Motions for Rehearing in this case are just such documents.

We take this opportunity to remind Mr. Taft that his primary duty is to see that justice is done. See Article 2.01, V.A.C.C.P. The instant motions for rehearing, having as their primary thrust to demean this Court and the members thereof, are an example of the antithesis of that duty.

This Court does not condone the filing of such a pleading nor will we give any consideration to the merits of such a pleading. Therefore, the Clerk of this Court is directed to strike, with prejudice, the motions for rehearing filed in these causes.

IT IS SO ORDERED.

MALONEY, Justice, concurring.

While I join the above order, I believe that this Court should order Mr. Taft to show cause why he should not be held in contempt.

OVERSTREET, J., joins in this note.

BAIRD, J., not participating.