Gerald Wayne TIGNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 71839.

Court of Criminal Appeals of Texas, En Banc.

May 22, 1996.

Rehearing Denied Sept. 11, 1996.

Walter M. Reaves, Jr., West, for appellant.

Crawford Long, Asst. Dist. Atty., Waco, Robert A. Huttash, State's Atty., Austin, for State.

### OPINION

MANSFIELD, Judge.

A McLennan County jury convicted appellant, Gerald Wayne Tigner, of capital murder.[1] At the punishment phase of the trial, the jury found appellant to be a future danger under Article 37.071 § 2(b)[2] and, further, declined to find mitigating circumstances sufficient to militate against application of the death penalty under Article 37.071 § 2(e). The trial court sentenced appellant to death. We now reverse.

In point number one, appellant contends that the trial court erroneously admitted his oral confession, in violation of Article 38.22 § 3(a)[3], because a complete and accurate recording of the confession was not provided to defense counsel more than twenty days before the commencement of voir dire. *See* Article 38.22 § 3(a)(5). With respect to this point of error, the record reflects the following relevant facts:

On September 29, 1993, appellant was indicted for capital murder. He was arrested the next day, September 30. A few days after his arrest, in a tape-recorded statement to police, appellant conceded shooting the decedents but claimed self-defense. Defense counsel, aware of appellant's recorded statement, filed a written discovery request, dated October 19, 1993, in which he requested access to the recording so that he could inspect it, copy it, subject it to scientific analysis, etc. Appellant next filed a motion to suppress all oral statements on October 27, 1993. At the time he filed the suppression motion, appellant had not yet received a copy of the recorded statement.

On December 15, 1994, appellant stated in a pre-trial hearing that he had been given complete access to the prosecution file "ten days to two weeks ago." Apparently, appellant obtained a transcript of the recorded oral statement from this file. Appellant had still not been provided a copy of the electronic recording.

On January 24, 1994, the State provided appellant with a copy of the electronic recording. The hearing on appellant's motion to suppress the recorded statement was held four days later on January 28, 1994. At the suppression hearing, appellant objected to the statement's admissibility, contending that he had not been provided a copy of the tape within the statutory confines of Article 38.22 § 3(a)(5). The trial court refused to rule on appellant's objection, announcing that it in-

---

1. Appellant was convicted for violation of Texas Penal Code § 19.03, which reads in relevant part:

   (a) A person commits an offense if he commits murder as defined under Section 19.02(b)(1) and:

   \* \* \* \* \* \*

   (7) the person murders more than one person:
   (A) during the same criminal transaction;

2. All Article references are to those in the Texas Code of Criminal Procedure then in effect.

3. The relevant portions of Article 38.22 § 3 follow:

   (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

   (1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

   (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the

accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified; and

(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

\* \* \* \* \* \*

(e) The courts of this state shall strictly construe Subsection (a) of this section and may not interpret Subsection (a) as making admissible a statement unless all requirements of the subsection have been satisfied by the state, except that:

(1) only voices that are material are identified; and

(2) the accused was given the warning in Subsection (a) of Section 2 above or its fully effective equivalent.

tended to wait until the State offered the statement in evidence. Jury selection began on January 31, 1994, seven days after appellant received a copy of the oral confession. Voir dire took several weeks. The jury was empaneled and the indictment was read on February 21, 1994, 27 days after appellant received a copy of the recorded statement.

At trial, appellant's defensive theory was alibi and mistaken identity. To counter appellant's contentions, the State sought to introduce appellant's tape-recorded statement in which he acknowledged the shooting but claimed self-defense. Defense counsel then reasserted his Article 38.22 § 3(a)(5) objection, and the trial court finally overruled it. Appellant's recorded statement was played before the jury on February 24, 1994. The State then utilized the statement to obtain a self-defense jury instruction. During final argument, the State cited the self-defense instruction to attack the defensive theory of alibi and mistaken identity.[4]

Article 38.22 § 3(a)(5) precludes the admissibility of an electronically recorded oral statement if a "copy" of that recording is not provided to defense counsel at least twenty days prior to "the proceeding." Here, the State provided a complete and accurate copy of appellant's tape-recorded statement four days before the hearing to suppress that statement, and seven days before the commencement of voir dire. Nevertheless, given the length of voir dire, the jury was empaneled 27 days after the production of the tape-recording.

The question presented in point of error number one is whether the term "proceeding," as used in Article 38.22 § 3(a), encompasses voir dire. Appellant argues that consideration of the legislative purpose behind the provision indicates that "proceeding" includes, at the very least, voir dire. Hence, appellant avers, his oral statement was inadmissible because the State provided a copy a mere seven days before the commencement of voir dire. The State argued, at trial, that compliance with Article 38.22 § 3(a)(5) was

secured if the State provided a copy twenty days before the *statement was admitted into evidence.* The State now contends that a "proceeding" commences when jeopardy attaches and, thus, the trial court did not err because a copy of the tape-recording was provided 27 days before the jury was sworn.

## I.

The focus of statutory interpretation is upon the literal text of the statute in question. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

> We do this because the text of the statute *is the law* in the sense that it is the only thing actually adopted by the legislators, probably through compromise, and submitted to the Governor for her signature.... [T]he Legislature is *constitutionally entitled* to expect that the Judiciary will faithfully follow the specific text that was adopted. *Id.* at 785. [emphasis in original]

However, if a statute has an ambiguity, or if a literal interpretation would lead to an "absurd" result, we are constitutionally authorized to look to extratextual factors to determine its application. *Id.*

At the outset this Court must resolve a prefatory interpretive matter. Did the State comply with the Article 38.22, § 3(a)(5) requirement to provide "a true, complete, and accurate copy of recordings of the defendant" when it furnished a transcript of that recording to defense counsel? We begin this statutory analysis with the observation that Article 38.22 § 3(a)(5) is not ambiguous on this point. In subsection (a)(1), the statute provides a clear definition of the term "recording." A "recording" must be electronically rendered, and may include video-recording as well as audio-recording. Subsection (a)(3) speaks to the accuracy of the recording device, again consistent with the unambiguous intent that a defendant's statement be electronically recorded. Subsections (1) and (3) clearly confirm that a "recording" connotes an electronic recording.

---

4. Appellant did not testify during the guilt/innocence phase. If appellant had testified in support of his alibi claim, the State could unquestionably have used his oral statement for impeachment, and the issue of its admissibility under Article 38.22 § 3(a)(5), would be academic. *See* Article 38.22 § 5.

While the preceding may seem uncontroversial, it is helpful to an interpretation of the word "copy." In subsection (5), the statute dictates that the State provide defense counsel with a "copy of all recordings." By "recording," it is plain that the legislature meant "electronic recording." Thus, the statute requires the State to provide counsel with a "copy of all electronic recordings."

When interpreting the plain meaning of "copy," one might ask, how does a person provide a copy of an electronic-recording? The compelling response to this question is that one provides a "copy" of an electronic recording by furnishing something which is itself an electronic recording. This is especially true in the context of the Legislature's direction, in Article 38.22 § 3(e), that we strictly construe the statute.

Indeed, even if this Court assumed, arguendo, that the term "copy" was ambiguous, the legislative history deems a transcript inadequate. A fundamental purpose of this Article was to provide defense counsel with an actual electronic recording so that he might subject it to expert analysis to determine its accuracy, etc. *See Debate on Tex. S.B. 55 on the Floor of the Senate, 71st Leg., R.S. (Apr. 13, 1989) (tapes available from Senate Staff Office).* The following exchange took place during the legislative debate for Article 38.22 § 3(a)(5):

> SENATOR (unknown): Your bill also provides that the defense attorney has accessibility to that tape in order for him to check it out on his own devices as to whether or not that oral confession warning has been pre-recorded, and then the beatings take place, and then the young man confesses, or the young woman, or the old man, right?
>
> SENATOR BROWN: That's correct, senator.
>
> SENATOR (unknown): And you can tell that through splicing and you can tell through "high-tech," and of course it will increase the defense lawyer's fees.

One could not perform "high-tech" analysis on a transcript. Hence, the Legislature must have deemed a transcript deficient. The Legislative history indicates no contrary purpose for this statute.

Finally, we note, too, that two leading scholars, Professors Dix and Dawson, agree that "copy" does not encompass "transcript." They write in their treatise, *Criminal Practice and Procedure,* § 13.104:

> What is provided to defense counsel *must be recordings constituting copies*—presumably, accurate ones—of the recordings covered. Since the purpose of the requirement is to enable defense counsel to investigate potential challenges to the admissibility and credibility of the recorded statement to be offered by the State, a transcription of the recording is not sufficient. [citing *Castaneda v. State,* 852 S.W.2d 291, 293–94 (Tex.App.—San Antonio 1993) ] *Such a transcription, even if accurate, might not fully reflect matters bearing on admissibility and credibility.*

Hence, we hold that a "transcript" is not a "copy" for the purpose of Article 38.22 § 3(a)(5).

■ We now turn to "proceeding." Does the term "proceeding," as used in Article 38.22 § 3(a)(5), encompass voir dire? As a preliminary matter, we observe that a literal reading of the term "proceeding" does not support the State's assertion that it commences when jeopardy attaches. The relevant provision of Article 38.22 § 3 is as follows:

> (a)(5) not later than the 20th day before the date of *the proceeding,* the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article. [emphasis added]

The term "proceeding" is a very broad nomenclature. Black's Law Dictionary defines "proceeding" in the following way:

> In a general sense, the form and manner of conducting juridical business before a court or judicial officer; regular and orderly progress in form of law; *including all possible steps in an action from its commencement to the execution of judgment. . . . All the steps or measures adopted in the prosecution or defense of an action.* Black's Law Dictionary 1204 (6th ed. 1990). [emphasis added]

Although the term "proceeding" is broad enough, on its face, to encompass all steps between official accusation and final disposition of the charge, here, we address only the issue of whether the term "proceeding," as used in Article 38.22 § 3(a)(5), encompasses voir dire. If the Legislature intended to draft a statute which advanced the State's position, then its use of a term with such broad connotation contradicts this purpose. The State asks this Court to ignore the unrestricted character of the statute, equating "proceeding" with something akin to "trial on the merits." Yet the Legislature did not employ the more restrictive phrase "trial on the merits." Throughout the Code of Criminal Procedure, the Legislature used the term "trial on the merits" to specify a distinct phase late in a criminal proceeding.[5] The Legislature did not do so with Article 38.22 § 3(a)(5), and we must assume that its word choice advances its purpose. *Boykin.*

Indeed, the original House version of Article 38.22 § 3(a)(5) would have supported the State's position:

§ 3(a)(5) on the request of the defendant, the attorney representing the state provides the defendant with a true, complete, and accurate copy of all recordings of the defendant made under this article or, in the absence of a request by the defendant, the attorney representing the state, not later than the 10th day before the commencement of *the trial on the merits in the case,* provides the defendant with a true, complete, and accurate copy of all recordings made under this article. Tex. H.B. 11, 71st Leg., R.S. (1989). [emphasis added]

If the Legislature had retained this language in its final version of Article 38.22 § 3, the State would have a stronger claim for its restrictive interpretation. However, the Legislature ultimately adopted the Senate's less restrictive version of the Article 38.22 amendments. The Senate version substituted the term "proceeding" for "trial on the merits." *See* Tex.Conf.Comm.Rpt., S.B. 55, 71st Leg., R.S. (1989).[6]

The State contends, nevertheless, that its interpretation of "proceeding" must be sustained if the term is read in conjunction with the phrase "criminal proceeding" as it appears in Article 38.22 § 3(a). The State begins its argument by postulating that "proceeding" is an abbreviated reference to the phrase "criminal proceeding" found in Article 38.22 § 3(a). The State then argues that the Legislature intended to extend "criminal proceeding" to only those phases of a criminal prosecution at which the oral statement "shall be admissible against the accused." Since the oral statement of an accused cannot be utilized against the accused during voir dire, the State argues, voir dire is not a "criminal proceeding."

In addressing this argument, we again observe that the Legislature's word selection was very broad, conceivably extending to all phases of a criminal prosecution. Black's Law Dictionary defines "criminal proceeding" as: "Strictly, a 'criminal proceeding' means some step taken before a court against some person or persons charged with some violation of the criminal law." *Black's Law Dictionary* 374 (6th ed. 1990). The

---

5. *See* Article 1.14(b), Article 28.01 § 1, and Article 28.10(a) and (b).

6. The dissent claims that a criminal prosecution does not become a "proceeding" until a jury has been empaneled and jeopardy attaches. The dissent cites Article 36.01(a) in support of this theory. Article 36.01(a) reads:

   **Art. 36.01 Order of Proceedings in Trial**
   (a) A jury being impaneled in any criminal action, except as provided by Subsection (b) of this article, the cause shall proceed in the following order: ...

   Article 36.01(a) does not address whether a "proceeding" includes voir dire. It speaks only to how a case will "proceed" after a jury is impan-

eled. Indeed if the dissent was accurate about its interpretation of Article 36.01(a), then the Code of Criminal Procedure would become confusing. For instance, Article 1.051(a) reads in relevant part:

   (a) A defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial *proceeding*. The right to be represented by counsel includes the right to consult in private with counsel sufficiently in advance of a *proceeding* to allow adequate preparation for the *proceeding*. [emphasis ours]

Under the dissent's interpretation of Article 36.01(a), a defendant would be entitled to counsel only after a jury is impaneled, a result which would likely violate the constitutional right to counsel.

State again attempts to liken "criminal proceeding"—a phrase which is facially very broad—to "trial on the merits." However, if the legislative purpose was to confine the application of Article 38.22 § 3(a) to a "trial on the merits," then the use of broad terminology failed to promote such an intent.

Indeed, even assuming, *arguendo,* the State's contention that the term "criminal proceeding" is confined to those procedural phases in which the oral statement is admissible against a defendant, such analysis leaves unanswered the issue of what the Legislature meant by "proceeding." This is because such a definition fails to resolve the very issue presented at bar: Whether voir dire is a part of the "proceeding" at which the oral statement is admissible against the defendant. The State's interpretation does not clarify this latent ambiguity. Hence, we are back to our original query: Does the term "proceeding," as used in Article 38.22 § 3(a)(5), encompass voir dire? [7]

As delineated, supra, the Legislature has demonstrated its willingness to utilize the term "trial on the merits" as a distinct term of art throughout the Code of Criminal Procedure. The fact that the Legislature did not do so here is persuasive textual evidence that it did not intend to transform the term "proceeding" into "trial on the merits."

Thus, the meaning of "proceeding" as used in Article 38.22, § 3(a)(5) is ambiguous. It is ambiguous because a literal reading of the term does not denote which step or steps constitute "the proceeding" for the purpose of this statute. As we held in *Boykin,* supra, when a statute is ambiguous, we utilize extratextual factors to determine its application.

The use of extratextual factors indicates that the term includes voir dire. The proposed amendments to Article 38.22 § 3 would have initially eliminated the requirement that

an accused be advised he was being electronically recorded during a custodial interrogation. *See Hearings on Tex.S.B. 55 Before the Senate Comm. on Crim.Justice, 71st Leg., R.S. (Mar. 7, 1989) (tapes available from Senate Staff Services Office).* When the possibility of surreptitious custodial interrogation was proposed on the Senate floor, it engendered vigorous debate. *See Debate on Tex.S.B. 55 on the Floor of the Senate, 71st Leg., R.S. (Apr. 13, 1989) (tapes available from Senate Staff Office).* In response to this debate, certain protections for an accused were proposed on the floor of the Senate. One of those protections was that defense counsel be provided with a copy of the electronic recording twenty days before the "proceeding." *Id.* The purpose of the twenty day requirement was to provide defense counsel with adequate time to prepare possible challenges to the admissibility or credibility of recorded statements offered by the State. As one senator remarked on the floor, in an exchange alluded to, supra, the twenty-day requirement was intended to provide defense counsel adequate time to examine the tape to determine if any splicing or alteration had taken place, or if any other improprieties had occurred during the taping.

Senator Washington, the individual who proposed the twenty day rule on the floor of the Senate, also commented on its purpose. When asked what the twenty day safeguard meant, he responded:

> SENATOR WASHINGTON: So if you're going to make the recording, give the guy's lawyer a copy of it, and you can probably settle a lot of these cases if they know that.

This reference demonstrates that the author of Article 38.22 § 3(a)(5), intended it to mean that defense counsel be given a copy of the tape-recording with ample time to plea bargain. Such an understanding would neces-

---

**7.** The dissent adopts the State's argument that the term "proceeding" means any "proceeding" in which the electronically recorded oral statement "shall be admissible against the accused." Such a position is logically incongruous. To define the term "proceeding" by reference to language which again utilizes the term "proceeding" is not possible, logically. Even if we accept the State's argument—that a "proceeding" is any "proceeding" at which a statement "shall be admissible against the accused," and that such a statement cannot be admitted against an accused during voir dire—such a definition does not resolve whether voir dire is part of the "proceeding" at which the statement is admissible. This is so because, even assuming the State's definition, the term "proceeding" is still ambiguous. Our task here is to determine whether voir dire is a part of the "proceeding" for the purpose of Article 38.22 § 3(a).

sarily indicate that the tape-recording be provided prior to voir dire, at the very least.

Although the State concedes in its brief that the purpose of Article 38.22 § 3(a)(5) was to avoid "ambush," its interpretation would confound that purpose in many cases. The inconsistency results because the State discounts the length of voir dire, particularly in capital cases. If the State was correct, then a prosecutor could refuse to provide defense counsel with a copy of a defendant's tape-recorded statement until several weeks after the commencement of voir dire. Indeed, because Article 38.22 permits surreptitious recording of an accused, defense counsel might be unaware of the *existence* of such a recorded statement until, perhaps, midway through the voir dire process. The State contends that defense counsel's knowledge of a tape-recorded statement is irrelevant because that statement cannot be used during voir dire. However, without pre-voir dire knowledge of a statement's existence, defense counsel would be unable to question the veniremembers regarding their ability to obey the trial court's instruction that they ignore the oral confession unless they believe beyond a reasonable doubt that the statement was voluntarily made. *See* Article 38.22 § 6.

The Legislature has given an unusual, yet explicit command to "strictly construe" Article 38.22 § 3(a). *See* Article 38.22 § 3(e). Such unambiguous direction indicates the Legislature's intent that this Court strictly advance its purpose to declare inadmissible all custodial statements not provided to defense counsel with ample time to effectively challenge their admissibility. The purpose of Article 38.22 § 3(a)(5) would be largely defeated where defense counsel did not have a copy of a defendant's electronically-recorded statement prior to voir dire. Only by interpreting the term "proceeding" to include voir dire is the legislative purpose advanced.

Professors Dix and Dawson address also the meaning of "proceeding," as used in Arti-

cle 38.22 § 3(a)(5), in *Criminal Practice and Procedure* § 13.104:

The required copies must be provided to defense counsel not later than the 20th day before the date of "the proceeding." Since the purpose of the requirement is to enable defense counsel to prepare possible challenges to the admissibility or credibility of recorded statements to be offered by the State, "the proceeding" must mean the proceeding at which those issues will arise. If a pretrial hearing is to be held on the admissibility of an electronically recorded statement, then, compliance must be completed by the 20th day before that hearing. If no pretrial hearing is to be held, the copies must be provided by the 20th day before trial.

It is evident that Dix and Dawson believe the term "proceeding" includes a pretrial hearing—if there is one. Given this understanding and its application to the facts at bar, the prosecution failed to comport with Article 38.22 because it provided a copy of the tape-recording only four days prior to the suppression hearing. Indeed, under the Dix and Dawson rationale, since the issue of a statement's admissibility will *arise* during voir dire via questioning about a veniremember's ability to abide by Article 38.22 § 6, a "proceeding" must also include voir dire.

We therefore conclude that the term "proceeding," as used in Article 38.22 § 3(a)(5), encompasses voir dire. A plain reading of the statute demonstrates that the literal language includes all the steps between official accusation and final judgment. Extratextual sources narrow the interpretive breadth of "proceeding" and illustrate that voir dire is within its ambit. This conclusion will most faithfully advance the purpose and intent of the Legislature. The State's narrow interpretation of Article 38.22 § 3(a)(5) could too easily serve to promote obfuscation and ambush, such potential being unquestionably contrary to the meaning and legislative purpose of the statute.[8]

8. The dissent would also hold that appellant waived any complaint regarding the State's failure to abide by Article 38.22 § 3(a)(5). The dissent correctly points out that appellant did not request more time to prepare for trial, or claim prejudice when he made his Article 38.22 § 3(a)(5) objection during the pre-trial suppression hearing. The dissent is correct when it characterizes appellant's objection as being based "solely" upon Article 38.22 § 3(a)(5).

## II.

▇ The State finally contends that, even if there was a violation of Article 38.22 § 3(a), "[a]ppellant has been unable to demonstrate any harm whatsoever that relates to the date a copy of the recording was provided to the defense." If the State is grounding this assertion upon Texas Rule of Appellate Procedure 81(b)(2), then it has misunderstood the rule. If, by this argument, the State is intending to concoct a new category of harmless error, it has provided little support for its contention.

The gravamen of the State's argument as it pertains to harmless error follows:

As previously pointed out, Appellant was obviously aware of the statement and filed a Motion to Suppress them in October 1993. The defense was given a copy of the tape on January 24, 1994. The tape was played in open court on January 28, 1994.... Appellant was aware of the tape and statements made to law enforcement and was not hindered in presenting his defense. The defense never expressed surprise or requested a continuance either

at the suppression hearing or when the tape was introduced in the State's rebuttal case on February 24, 1994. State's brief at 6.

The State's argument seems to be that there was no harm because appellant was subjectively aware of the contents of the custodial statement. Appellant was not ambushed, the State contends, because appellant did not act surprised or request a continuance. Yet such an argument fundamentally misconceives the notion of harmless error under Tex.Rule.App.Proc. 81(b)(2).

Under Rule 81(b)(2)[9], this Court must find, beyond a reasonable doubt, that an error made no contribution to the conviction or to the punishment before it can find error to be harmless. Article 38.22 § 3(a), is a statute respecting the *admissibility* of evidence. Thus, for the purpose of harm analysis in this case, the trial error is the *erroneous admission of evidence.* The error is *not,* as the State implicitly contends, the failure to provide defense counsel with a copy of the custodial statement. By focusing on the harm flowing from its failure to provide de-

---

Yet, appellant made an articulate objection, specifically citing the Article which provided the legal rationale for exclusion of the confession. There is no contention that the trial court failed, in any way, to comprehend appellant's contention that he did not receive a copy of the confession within the twenty day requirement. The dissent, however, would require appellant to do more. Under the dissent's view, a defendant would have to provide specific grounds, extraneous from the rule itself, in support of his objection. Our research has failed to uncover legal support for the proposition that a defendant is required to provide "special reasoning" in support of his objection, or face waiver. The dissent is placing a burden upon the defendant to ameliorate the "harm" of the State's own error, or face waiver. It is, however, enough that appellant object to the State's non-compliance in a fashion which gives the trial court an opportunity to give appellant relief.

The dissent identifies a purpose of Article 38.22 § 3(a)(5)—that a defendant have enough time to review a statement—and claims that this purpose compels a defendant to do more than lodge an objection to the State's failure to comply with Article 38.22 § 3(a)(5). To find *waiver* when a defendant properly raises the State's failure to abide by a statute because that defendant fails to establish harm from non-compliance, goes too far, in our opinion. The dissent's position significantly alters the nature of waiver analysis in this context, creating a dangerous

barrier to a defendant's right to appellate review of a criminal conviction.

The dissent makes a second related waiver argument, contending that appellant did not obtain an adverse ruling as to his Article 38.22 § 3(a)(5) objection, or object to the trial court's failure to do so, *at the suppression hearing.* The trial court delayed ruling on appellant's argument until trial. Yet, appellant did renew his objection, and obtain an adverse ruling, at trial, before the confession was admitted. We fail to discern what more appellant was required to do. The dissent seems to think that the objection was untimely because the trial court could not "make a ruling requiring the State to remove the basis of appellant's objection to the statement by the time the State offered it into evidence at trial." Yet, a criminal defendant has never been compelled to object, at the risk of waiver, in a manner which would save the State from its own error, and the dissent cites no case supporting this contention. Article 38.22 § (3)(a)(5), is a statute respecting the *admissibility* of evidence. Appellant requested that the trial court declare his confession inadmissible. When appellant renewed his objection, the trial court was in a suitable position to grant relief, i.e. the trial court could rule the confession inadmissible. Appellant was required to do no more.

9. All Rule references are to those in the Texas Rules of Appellate Procedure.

fense counsel with a copy of appellant's statement, the State alters the nature of harm analysis.[10]

Hence, to advance its notion of harm analysis, the State contends that a failure to abide by Article 38.22 § 3(a)(5), is not reversible where appellant was not surprised by the contents of the statement. Yet, the Legislature resolved that a defendant be given a copy of a recorded statement 20 days before the "proceeding,"[11] if the State intended to utilize a recorded statement at trial. The State disputes this legislative conclusion, in effect arguing that, if no harm stems from its failure to abide by Article 38.22 § 3(a)(5), then the statute should not apply. The State is essentially questioning the wisdom of extending the statute to these facts. Such an argument is better addressed to the Legislature.

We are permitted, however, to measure the harm flowing from the erroneous admission of evidence to determine if reversal is mandated. This form of harm analysis—as authorized by Rule 81(b)(2)—is distinct from the State's version of harm analysis because Rule 81(b)(2) does not compel this Court to question the policy resolutions of the Legislature. The policy judgments of the Legislature remain intact because we narrowly focus on whether a statutory violation affected a conviction or punishment. Thus, if an error at trial had no effect, a new trial is unnecessary. The State would have this Court weigh, under the guise of harm analysis, the pros and cons for extending a statute to a particular circumstance. Although such analysis might be appropriate when *interpreting* a facially ambiguous or "absurd" statute, it is inappropriate when measuring the *harm* resulting from the violation of ~~an unambiguous~~ a statute.

### III.

Thus, this Court must reverse the judgment if the error was not harmless. Under the plain text of Rule 81(b)(2), the duty of this Court is to determine whether there is a reasonable possibility that the error contributed to the finding of guilt. *Harris v. State,* 790 S.W.2d 568, 585 (Tex.Crim.App.1989). For reasons that follow, we hold that the error was not harmless.

As noted previously, the defensive theory at trial was mistaken identity and alibi. Appellant's grandmother, Josephine Green, testified that appellant was with her, at her residence, during the time of the killings. In addition, Ms. Green's neighbor, Gloria Cabiness, testified that at the time of the killings she too was at Ms. Green's residence, where she was introduced to appellant. Finally, Carl Butler testified that he saw another man, not appellant, do the shooting. Each of appellant's witnesses was subject to varying degrees of impeachment.

The heart of the State's case involved three eyewitnesses who testified that appellant did the shooting. One of the eyewitnesses, Carl Washington, had never seen appellant before the shooting. The other, Roy Darden, testified that he recognized appellant "from around town." Finally, Timothy Scott testified that he was with appellant just before the shooting, watched appellant kill the decedents, and then left with appellant. Each of the State's witnesses was also the subject of varying degrees of impeachment.

There appears to be a reasonable likelihood that, but for the error, the jury would not have convicted appellant. The erroneous admission of appellant's statement was damaging because the State's case was not otherwise overwhelming. In his oral statement, appellant confessed to killing the two people alleged in the indictment. This Court would be hard pressed to deny that such a confession contributed to the jury's finding of guilt given the nature of the defense. Indeed, the State acknowledged the damaging character of appellant's statement in its jury argument:

**10.** The defective nature of the State's analysis can be demonstrated in the hearsay context. If, for example, a trial court erroneously admitted an inculpatory hearsay statement against an accused, this Court would examine harm by scrutinizing the statement's prejudicial effect on the jury. We have never measured harm by examining what defense counsel subjectively knew, or whether defense counsel acted surprised. Such inquiry is irrelevant to Rule 81(b)(2) analysis.

**11.** This Court interpreted the term "proceeding" used in Article 38.22 § 3(a)(5), in Part I, supra.

PROSECUTOR: Now, we have a very interesting charge here, folks. It contains an alibi defense, which is a defendant saying that his defense is that he was not at the scene, that he is not the person that committed the crime. Then we have another portion of the Charge which is self-defense, which is a person saying, "Yes, I did the shooting, but I was justified in doing it to protect my life, as I perceived it." Folks, do you all see a slight disparity, a slight incongruity in those two defenses.

The State utilized appellant's statement in an effort to do the most damage to appellant's defense, yet it now argues that the attempt was unsuccessful. Given these facts, we cannot say, beyond a reasonable doubt, that the admission of appellant's statement did not contribute to the finding of guilt.

Having found that the trial court erroneously admitted appellant's statement in violation of Article 38.22 § 3(a)(5), and that such error was not harmless beyond a reasonable doubt, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

WHITE, J., concurs in the result.

McCORMICK, Presiding Judge, dissenting.

I respectfully dissent to the majority's disposition of appellant's first point of error.

The obvious purpose of Article 38.22, Section 3(a)(5), V.A.C.C.P., is to provide the attorney representing the defendant enough time to review the "copy" of the electronically recorded statement in order to adequately prepare for trial or any pretrial hearings. See Article 1.26, V.A.C.C.P., (provisions of the Code of Criminal Procedure shall be liberally construed so as to attain the objects intended by the Legislature); see also *Tigner v. State*, 928 S.W.2d 540 (Tex.Cr.App. 1996) (purpose of the twenty day requirement is to provide defense counsel with adequate time to prepare possible challenges to the admissibility or credibility of recorded statements offered by the State). Obviously this purpose was achieved in this case as appellant has failed to show or even allege any prejudice to his right to a fair trial from the State's alleged noncompliance with Article 38.22, Section 3(a)(5). The spirit and underlying purpose of the law has been satisfied here. I believe the majority would even agree with most, if not all, of this.

The majority concludes the meaning of "proceeding" in Article 38.22, Section 3(a)(5), is ambiguous. I disagree. Article 38.22, Section 3(a)(5), provides:

"No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a *criminal proceeding* unless[:] not later than the 20th day before the date of the *proceeding*, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article." (Emphasis Supplied).

The State argues, and I agree, that the term "proceeding" refers to "criminal proceeding." Read this way, it is clear the Legislature intended "criminal proceeding" to refer only to those phases of a criminal prosecution at which an electronically recorded oral statement "shall be admissible against the accused." Since an electronically recorded oral statement is not admissible against an accused during voir dire, then voir dire is not a "criminal proceeding" for purposes of Article 38.22, Section 3(a)(5). See also Article 36.01(a)(6), V.A.C.C.P., (setting out that part of the *proceeding* during which an electronically recorded statement is "admissible against an accused"). This is what the "plain" language of Article 38.22, Section 3(a)(5), means. See *Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex.Cr.App.1991).

In addition, under Article 36.01(a), V.A.C.C.P., a criminal prosecution does not become a "proceeding" until the jury has been empaneled and jeopardy attaches. See also *McElwee v. State*, 589 S.W.2d 455, 457 (Tex.Cr.App.1979). A jury is empaneled and jeopardy attaches *after* the completion of voir dire. Based on the foregoing, I would hold voir dire is not part of a "criminal proceeding" for purposes of Article 38.22, Section 3(a)(5). Therefore, the State timely produced appellant's electronically recorded

statement and the trial court did not err to admit the statement into evidence.

I also would hold appellant waived any appellate complaints about the admission of the statement on the basis of the State's noncompliance with Article 38.22, Section 3(a)(5). The record in this case reflects appellant objected at the January 28, 1994, suppression hearing to the admissibility of the electronically recorded statement on the basis of the State's noncompliance with the twenty day requirement in Article 38.22, Section 3(a)(5). However, appellant *did not insist* at this hearing that his right under Article 38.22, Section 3(a)(5), to enough time to review the statement was being violated. See Tex.R.App.Proc. 52(a) (to preserve a complaint for appellate review, a party must state the *specific grounds* for the ruling he desires the court to make); Article 1.26; *Marin v. State*, 851 S.W.2d 275, 279 (Tex.Cr. App.1993) (most rights are waived if not insisted upon by the party to whom they belong). He made no claim he needed more time to prepare for the suppression hearing or for trial. And, he never requested a continuance of the suppression hearing or a trial continuance so he could have more time to review the statement. He objected to the admissibility of the statement at trial *solely* on the basis of the State's noncompliance with Article 38.22, Section 3(a)(5).

Since the purpose of Article 38.22, Section 3(a)(5), is to provide a defendant with enough time to review the statement, then the defendant should object that he has not had enough time to review the statement, if the basis of his objection is the State's noncompliance with Article 38.22, Section 3(a)(5). See Article 1.26, V.A.C.C.P., (provisions of the Code of Criminal Procedure shall be liberally construed so as to attain the objects intended by the Legislature). In light of the purpose of Article 38.22, Section 3(a)(5), I would hold appellant's objection to the admissibility of the statement solely because of the State's noncompliance with Article 38.22, Section 3(a)(5), preserved nothing for review. See Tex.R.App.Proc. 52(a).

More importantly, appellant also did not object at the January 28, 1994, suppression hearing to the trial court's deferring a ruling until trial on appellant's suppression-hearing objection to the admissibility of the statement. However, appellant now complains on appeal that his statement was inadmissible at trial because the trial court did not require the State to provide appellant with a copy of the statement in a timely manner. But, had appellant timely pursued his suppression-hearing objection to a ruling, then the trial court would have had an opportunity to make a ruling requiring the State to remove the basis of appellant's objection to the statement by the time the State offered it into evidence at trial. Cf. *Norris v. State*, 902 S.W.2d 428, 446 (Tex.Cr.App.1995). Therefore, on this record, I would hold appellant's failure to object to the trial court's refusal at the suppression hearing to rule on his objection to the admissibility of the statement waived any appellate complaints about the admissibility of the statement on the basis of the State's noncompliance with Article 38.22, Section 3(a)(5). See Tex.R.App.Proc. 52(a) (if the trial court refuses to rule on an objection, an objection to the court's refusal to rule is sufficient to preserve the complaint); Cf. *Norris*, 902 S.W.2d at 446.

I respectfully dissent.

MEYERS and KELLER, JJ., join this dissent.