# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00251-CR

Brenda Sue Gaines, Appellant

v.

The State of Texas, Appellee

### FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT
### NO. 8110, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Brenda Sue Gaines guilty of forgery and assessed her punishment at two years in state jail. *See* Tex. Penal Code Ann. § 32.21 (West Supp. 2008). Appellant contends that the evidence is legally and factually insufficient to sustain the jury's verdict. She also contends that her videotaped statement to the police was erroneously admitted in evidence. We overrule these contentions and affirm the conviction.

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (legal sufficiency); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000) (factual sufficiency). In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict; it is

assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 234 S.W.3d at 778. In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

The check in question, State's exhibit one, was presented at a Lampasas grocery store on the night of June 30, 2007. The check, for $236.04, purported to be written on an account at the Union State Bank in Florence belonging to Karyn Haggard, and it bore that signature. It was undisputed that this check was a forgery. The vice president and head bookkeeper at the bank testified that the account number on the check was invalid and that no one named Karyn Haggard had a checking account at the bank.

James Ward testified that he was working as "front end manager" at the grocery store on the night of June 30. Ward said that, in accordance with store policy, he was paged by checker

2

Jessica Gill to approve a check that had been written for more than the amount of purchase. Ward identified exhibit one as the check he was asked to approve and appellant as the person who had presented it. Having apparently had a prior unfavorable experience with appellant, Ward took the check to his office, paged the store manager, and then called the police.

The manager in charge that night was Diane Harding. She testified that when she responded to Ward's page, he gave her the check and explained the situation to her. Harding then went to Gill's checkout counter and asked appellant, whom Harding identified in court, for identification. Appellant told Harding that she did not have any identification. Harding testified that appellant offered to write a new check for the amount of purchase. Harding told appellant that, without proper identification, she would not be allowed to give a check for any amount. At this point, the police arrived.

The subsequent police investigation led to a vehicle parked outside the grocery store and to the occupant of the vehicle, Erica Ann Charles. The evidence shows that Charles was with appellant in the store, but left the store when the check was questioned. Two purses were found in the car. One of the purses contained three blank checks having the same decorative image as exhibit one. One of these checks purported to be for the same account shown on exhibit one. Another check purported to be for an account at the Extraco Bank in "Coppers Cove" and bore the name Karyn Haggard with a Copperas Cove address. The third check purported to be for an account at the National Bank in Copperas Cove and bore the name Pamela Longley with a Kempner address. Between them, the two purses also contained nine purported temporary driver's licenses in the names

of Karyn Haggard and Pamela Longley with a variety of addresses in Copperas Cove, Kempner, Florence, and Lufkin.

Pictures taken by the store's security cameras show appellant in the store at the time of the offense, both alone and with Charles. Appellant gave an oral statement to the police following her arrest, and a video recording of the statement was introduced in evidence. In her statement, appellant admitted participating in the forgery scheme with Charles.

Appellant contends that the evidence is legally and factually insufficient to support the guilty verdict because no witness testified to having seen appellant pass the forged check.[1] Appellant was not convicted for passing the forged check, however, but for possessing the check with intent to pass it. Moreover, the court's charge authorized appellant's conviction as either the primary actor or as a party to the offense with Charles. *See* Tex. Penal Code Ann. § 7.02 (West 2003). Both Ward and Harding identified appellant as the person who presented the check to Gill, and Harding also testified that appellant offered to write a new check for the amount of purchase. Appellant admitted her involvement in the crime in her oral statement. Viewing this evidence in the light most favorable to the verdict, the jurors could find beyond a reasonable doubt that appellant, alone or as a party, possessed the forged check with intent to pass it. The evidence is legally sufficient.

Both appellant and Charles were present when the forged check was presented to Gill, and it is possible that the check was actually passed by Charles. Nevertheless, the evidence supports

---

[1] Jessica Gill, the checker to whom the check was presented, was not allowed to testify because the State failed to include her on its witness list.

4

the inference that appellant was guilty, at least as a party, of possessing the forged check with intent to pass it. Viewing all the evidence in a neutral light, the evidence supporting the verdict is not so weak or so contrary to the preponderance of the available evidence as to make the finding of guilt clearly wrong or manifestly unjust. The evidence is factually sufficient to sustain appellant's conviction.

Appellant's remaining contention is that the video recording of her statement to the police was erroneously admitted because the State failed to timely provide a copy of the recording to the defense. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(5) (West 2005). Article 38.22, section 3 lists five prerequisites for the admission of an oral statement made during custodial interrogation, the fifth of which is that "not later than the 20th day before the date of the proceeding, the attorney representing the defendant [be] provided with a true, complete, and accurate copy of all recordings of the defendant made under this article." *Id*. This requirement is to be strictly construed. *Id*., art. 38.22, § 3(e); *see Tigner v. State*, 928 S.W.2d 540, 546 (Tex. Crim. App. 1996).

Appellant's trial began with voir dire on March 10, 2008. That is the "date of the proceeding" for the purpose of section 3(a)(5). *See Tigner*, 928 S.W.2d at 546. From the statements of counsel during the several discussions of this issue during the course of the trial, and from documents introduced for the record by both parties, we glean the following facts:

• Defense counsel received general discovery from the State in October 2007. Among other things, counsel received a copy of the police incident report.

• At page thirty of the incident report there is a summary of appellant's police interview followed by this statement: "The video recording of the Gaines interview was marked and tagged as evidence and attached to the original incident report."

5

• The district attorney maintains an open file policy and the recording of appellant's statement was available at the district attorney's office.

• The first time the State expressly informed defense counsel that it intended to introduce the recorded statement in evidence was during a pretrial hearing on either February 22 or 29, 2008. Both of these dates are less than twenty days before March 10.

• Defense counsel actually received a copy of the recording two days before trial began.

Appellant contends that the trial court should not have admitted her recorded statement because "[b]oth the State and Gaines agreed that a true, complete and accurate copy of the videotape in question was not provided to counsel for Gaines until the Saturday night prior to the start of the jury trial (less than 20 days prior to the start of the trial)." This argument fails to take into consideration the holding of the court of criminal appeals in *Lane v. State*, 933 S.W.2d 504 (Tex. Crim. App. 1996). The issue in that case was whether section 3(a)(5) requires the actual delivery of a copy of the recording to defense counsel. *Id*. at 514. The court held that it did not:

> Affording defense counsel access to the recordings effectuates [the purposes of the statute] as much as requiring actual delivery. So long as defense counsel is informed of the existence of the recording and permitted reasonable access to a copy, the purpose of § 3(a)(5) has been met. . . .
>
> In the present case, the tapes were played at a pre-trial hearing and admitted into evidence. . . . [D]efense counsel was placed on notice of the existence and contents of the recordings, and the recordings were available to him in the district clerk's office. He was thus provided with a copy of the tape.

*Id*. at 516.

In the cause before us, defense counsel was placed on notice of the existence and contents of the video recording of appellant's statement when he was given a copy of the police incident report in October 2007. The video recording was available to him in the district attorney's office. Therefore, he was at that time "provided" a copy of the recording within the meaning of article 38.22, section 3(a)(5) as construed in *Lane*. *See McClenton v. State*, 167 S.W.3d 86, 90-91 (Tex. App.—Waco 2005, no pet.); *see also Aguirre v. State*, No. 03-05-00370-CR, 2007 Tex. App. LEXIS 354, at *29-32 (Tex. App.—Austin June 13, 2007, pet. struck) (mem. op., not designated for publication). *Lane* does not require that counsel be told whether the State intends to use the recording at the time the recording is provided, and *Lane* expressly rejects appellant's contention that the State must actually deliver a copy of the recording to counsel in order to satisfy section 3(a)(5). The trial court did not err by overruling appellant's objection to the admission of her recorded statement.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: June 9, 2009

Do Not Publish

7